Dale M. Cendali (admitted *pro hac vice*)
dale.cendali@kirkland.com
Joshua L. Simmons (admitted *pro hac vice*)
joshua.simmons@kirkland.com
Shanti Sadtler Conway (admitted *pro hac vice*)
shanti.conway@kirkland.com
Megan L. McKeown (admitted *pro hac vice*)
megan.mckeown@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Sharre Lotfollahi (S.B.N. 258913)
sharre.lotfollahi@kirkland.com
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles, CA  90071
Telephone:  (213) 680-8400
Facsimile:  (213) 680-8500

*Attorneys for Defendant Epic Games, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRENCE FERGUSON, | CASE NO. 2:18-cv-10110-CJC(RAOx) |
| Plaintiff, | The Honorable Cormac J. Carney |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND SPECIAL MOTION TO STRIKE (ANTI-SLAPP) PLAINTIFF'S SECOND AMENDED COMPLAINT** |
| EPIC GAMES, INC., and DOES 1 THROUGH 10, | |
| Defendants. | Complaint Filed:  February 8, 2019 |
| | Hearing Date:   March 11, 2019 |
| | Time:              1:30 p.m. |
| | Courtroom:      7C |

## **TABLE OF CONTENTS**

I.      INTRODUCTION .................................................................................1

II.     STATEMENT OF ALLEGED FACTS...............................................4

III.    LEGAL STANDARDS..........................................................................5

IV.     ARGUMENT .........................................................................................7

      A.      **Plaintiff Cannot State a Claim for Copyright Infringement** .....7

          1.      Plaintiff's Dance Step Is Not Protected by Copyright...........8

          2.      Plaintiff's Dance Step is a Mere Idea ...............................12

          3.      The Works Are Not Substantially Similar..........................13

      B.      **Plaintiff's Remaining Claims Are Preempted by the Copyright Act**........................................................................................15

      C.      **Plaintiff's Right of Publicity Claims Are Barred by the First Amendment**.................................................................................17

      D.      **Plaintiff Cannot State a Trademark Claim** ...............................20

          1.      *Rogers v. Grimaldi* Principles Bar Plaintiff's Unfair Competition and Trademark Claims...................................20

          2.      Plaintiff Cannot State a Claim for Trademark Dilution ......22

      E.      **Plaintiff Is Not Entitled as a Matter of Law to Several Forms of Relief Requested in the Complaint**............................................22

V.      CONCLUSION ...................................................................................23

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Aaron Basha Corp. v. Felix B. Vollman, Inc.*,
88 F. Supp. 2d 226 (S.D.N.Y. 2000) ........................................................ 9

*Abbywho, Inc. v. Interscope Records*,
No. 06 Civ. 0672, 2008 WL 11406099 (C.D. Cal. Jan. 7, 2008) ........................... 22

*Apple Comput., Inc. v. Microsoft Corp.*,
35 F.3d 1435, 1443 (9th Cir. 1994) ........................................................ 13

*Aquarius Broad. Corp. v. Vubiquity Entm't Corp.*,
No. 2:15 Civ. 01854, 2016 WL 7165728 (C.D. Cal. June 30, 2016) ..................... 17

*Arenas v. Shed Media U.S. Inc.*,
881 F. Supp. 2d 1181 (C.D. Cal. 2011) .............................................. 6, 18, 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................ 5

*Baez v. Pension Consulting Alliance, Inc.*,
No. 2:17 Civ. 01938, 2017 WL 9500979 (C.D. Cal. July 20, 2017) ..................... 6

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................ 5

*Bibbero Sys., Inc. v. Colwell Sys., Inc.*,
893 F.2d 1104 (9th Cir. 1990) ............................................................ 9

*Bikram's Yoga Coll. of India, L.P. v. Evolation Yoga, LLC*,
803 F.3d 1032 (9th Cir. 2015) ........................................................... 12

*Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC*,
No. 2:11 Civ. 5506, 2012 WL 6548505 (C.D. Cal. Dec. 14, 2012) ..................... 12

*Blehm v. Jacobs*,
702 F.3d 1193 (10th Cir. 2012) ......................................................... 13

*Boost Beauty, LLC v. Woo Signatures, LLC*,
No. 2:18 Civ. 02960, 2018 WL 5099258 (C.D. Cal. Oct. 15, 2018) ..................... 7

*Brown v. Elec. Arts, Inc.*,
   724 F.3d 1235 (9th Cir. 2013) .............................................................. 20, 21

*Brown v. Entm't Merchants Ass'n*,
   131 S. Ct. 2729 (2011) ................................................................................. 6

*Cabell v. Sony Pictures Entm't, Inc.*,
   425 F. App'x 42 (2d Cir. 2011) ................................................................. 13

*Century Tile, Inc. v. Hirsch Glass Co.*,
   467 F. App'x 651 (9th Cir. 2012) ............................................................. 14

*Chey v. Pure Flix Entm't LLC*,
   No. 16 Civ. 164362, 2017 WL 5479640 (C.D. Cal. Feb. 10, 2017) ........ 8

*Christianson v. West Pub. Co.*,
   149 F.2d 202 (9th Cir. 1945) ................................................................ 8, 13

*CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*,
   97 F.3d 1504 (1st Cir. 1996) ................................................................. 9, 11

*Cusano v. Klein*,
   473 F. App'x 803 (9th Cir. 2012) ........................................................ 6, 15

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
   539 U.S. 23 (2003) ..................................................................................... 16

*DBC of N.Y., Inc. v. Merit Diamond Corp.*,
   768 F. Supp. 414 (S.D.N.Y. 1991) .............................................................. 9

*de Havilland v. FX Networks, LLC*,
   21 Cal. App. 5th 845 (Ct. App. 2018) ................................................... 6, 19

*Deckers Outdoor Corp. v. J.C. Penney Co.*,
   45 F. Supp. 3d 1181 (C.D. Cal. 2014) ....................................................... 17

*Derek Andrew, Inc. v. Poof Apparel Corp.*,
   528 F.3d 696 (9th Cir. 2008) ..................................................................... 23

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*,
   547 F.3d 1095 (9th Cir. 2008) ......................................................... 6, 20, 21

*Entous v. Viacom Int'l, Inc.*,
   151 F. Supp. 2d 1150 (C.D. Cal. 2001) ..................................................... 15

*Express, LLC v. Forever 21, Inc.*,
   No. 09 Civ. 4514, 2010 WL 3489308 (C.D. Cal. Sept. 2, 2010) ............................ 9

*Feist Pubs., Inc. v. Rural Tel. Serv. Co.*,
   499 U.S. 340 (1991)........................................................................................... 7

*Folkens v. Wyland Worldwide, LLC*,
   882 F.3d 768 (9th Cir. 2018) ................................................................ 12

*Garcia v. Google, Inc.*,
   786 F.3d 733 (9th Cir. 2015) ................................................................ 11

*Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*,
   742 F.3d 414 (9th Cir. 2014) ............................................................. 6, 7

*Griffin v. Peele*,
   No. 17 Civ. 01153, 2017 WL 8231241 (C.D. Cal. Oct. 18, 2017) ........................ 17

*Hall v. Swift*,
   No. 17 Civ. 6882, 2018 WL 2317548 (C.D. Cal. Feb. 13, 2018) ..................... 5, 14

*Horgan v. Macmillan, Inc.*,
   789 F.2d 157 (2d Cir. 1986) ............................................................. 9, 10

*Inhale, Inc. v. Starbuzz Tobacco, Inc.*,
   755 F.3d 1038 (9th Cir. 2014) .............................................................. 11

*Int'l Biotical Corp. v. Associated Mills, Inc.*,
   239 F. Supp. 511 (N.D. Ill. 1964)........................................................ 13

*Kates v. Crocker Nat'l Bank*,
   776 F.2d 1396 (9th Cir. 1985) .............................................................. 22

*Kirby v. Sega of Am., Inc.*,
   144 Cal. App. 4th 47 (2006) ...................................................... 17, 18, 19

*Laws v. Sony Music Entm't, Inc.*,
   448 F.3d 1134 (9th Cir. 2006) ........................................................ 15, 16

*Lewis v. Activision Blizzard, Inc.*,
   634 F. App'x 182 (9th Cir. 2015)........................................................ 16

*Lightbourne v. Printroom Inc.*,
   307 F.R.D. 593 (C.D. Cal. 2015)........................................................ 17

*Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co.*,
 170 F. Supp. 3d 1249 (C.D. Cal. 2016) ........................................................ 15, 16, 21

*Lorenzana v. S. Am. Rests. Corp.*,
 799 F.3d 31 (1st Cir. 2015) .................................................................................... 9

*Maloney v. T3Media, Inc.*,
 853 F.3d 1004 (9th Cir. 2017) ......................................................................... 6, 16

*Marcus v. ABC Signature Studios, Inc.*,
 279 F. Supp. 3d 1056 (C.D. Cal. 2017) ................................................................ 16

*Masterson Mktg., Inc. v. KSL Recreation Corp.*,
 495 F. Supp. 2d 1044 (S.D. Cal. 2007) ................................................................ 15

*Mattel, Inc. v. Azrak-Hamway Int'l, Inc.*,
 724 F.2d 357 (2d Cir. 1983) ................................................................................. 13

*Mazza v. Am. Honda Motor Co.*,
 666 F.3d 581 (9th Cir. 2012) ............................................................................... 17

*Metrano v. Twentieth Century Fox Film Corp.*,
 No. 08 Civ. 086314, 2009 WL 10672576 (C.D. Cal. July 16, 2009)..................... 21

*Mitchell v. Cartoon Network, Inc.*,
 No. 15 Civ. 5668, 2015 WL 12839135 (D.N.J. Nov. 20, 2015) ...................... 17, 18

*Naruto v. Slater*,
 No. 15 Civ. 04324, 2016 WL 362231 (N.D. Cal. Jan. 28, 2016).......................... 12

*Novalogic, Inc. v. Activision Blizzard*,
 41 F. Supp. 3d 885 (C.D. Cal. 2013) .............................................................. 20, 21

*Pelt v. CBS, Inc.*,
 No. 92 Civ. 6532, 1993 WL 659605 (C.D. Cal. Oct. 25, 1993) ........................... 11

*Reece v. Island Treasures Art Gallery, Inc.*,
 468 F. Supp. 2d 1197 (D. Haw. 2006)................................................................... 13

*Rentmeester v. Nike, Inc.*,
 883 F.3d 1111 (9th Cir. 2018) ............................................................... 7, 8, 12, 13

*Rogers v. Grimaldi*,
 875 F.2d 994 (2d Cir. 1989) ...................................................................... 3, 19, 20

*Roxbury Entm't v. Penthouse Media Grp., Inc.*,
    669 F. Supp. 2d 1170 (C.D. Cal. 2009) ...................................................... 20

*Saregama India Ltd. v. Young*,
    No. 02 Civ. 9856, 2003 WL 25769784 (C.D. Cal. Mar. 11, 2003) ......................... 22

*See v. Durang*,
    711 F.2d 141 (9th Cir. 1983) ................................................................ 13

*Sivero v. Twentieth Century Fox Film Corp.*,
    No. B266469, 2018 WL 833696 (Cal. Ct. App. Feb. 13, 2018) ..................... 18, 19

*Skinder-Strauss Assocs. v. Mass. Continuing Legal Educ., Inc.*,
    914 F. Supp. 665 (D. Mass. 1995) ............................................................. 9

*Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*,
    845 F.3d 1246 (9th Cir. 2017) ................................................................ 16

*Solid Oak Sketches, LLC v. 2K Games, Inc.*,
    No. 16 Civ. 724, 2016 WL 4126543 (S.D.N.Y. Aug. 2, 2016) ............................ 23

*Southco, Inc. v. Kanebridge Corp.*,
    390 F.3d 276 (3d Cir. 2004) .............................................................. 9, 11

*Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008) ................................................................ 16

*Thomas v. Walt Disney Co.*,
    337 Fed. App'x 694 (9th Cir. 2009) ........................................................... 8

*Trenton v. Infinity Broad. Corp.*,
    865 F. Supp. 1416 (C.D. Cal. 1994) ......................................................... 11

*VIRAG, S.R.L. v. Sony Computer Entm't Am. LLC*,
    699 F. App'x 667 (9th Cir. 2017) ............................................................ 21

*White v. Twentieth Century Fox Corp.*,
    572 F. App'x 475 (9th Cir. 2014) ............................................................. 8

*Wild v. NBC Universal*,
    513 F. App'x 640 (9th Cir. 2013) ............................................................. 7

*Winter v. DC Comics*,
    30 Cal. 4th 881 (2003) ...................................................................... 17

*Wood v. Midland Credit Mgmt., Inc.*,
  No. 05 Civ. 3881, 2005 WL 3159639 (C.D. Cal. July 29, 2005) ........................... 22

*Zekkariyas v. Universal Music-MGB Songs*,
  No. 11 Civ. 2912, 2011 WL 13220325 (C.D. Cal. June 6, 2011) .......................... 11

*Zhang v. Heineken N.V.*,
  No. 08 Civ. 6506, 2010 WL 11596643 (C.D. Cal. Sept. 29, 2010) ............... 8, 9, 11

*Zindel v. Fox Searchlight Pictures, Inc.*,
  No. 18 Civ. 1435, 2018 WL 3601842 (C.D. Cal. July 23, 2018) ............................ 6

**Statutes**

17 U.S.C. § 102 ................................................................................ 9, 12, 15

17 U.S.C. § 301 .......................................................................................... 15

17 U.S.C. § 412 .......................................................................................... 23

Cal. Civ. Code § 3344 .............................................................................. 16

Cal. Civ. Proc. Code § 425.16 .............................................................. 1, 6

**Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................... *passim*

**Other Authorities**

37 C.F.R. § 202.1 ....................................................................................... 10

37 C.F.R. § 202.1(a) (2018) ..................................................................... 11

H.R. Rep. 94-1476 ....................................................................................... 9

Letter from U.S. Copyright Office to Puo-I "Bonnie" Lee (dated July 14,
  2016) ..................................................................................................... 11

U.S. Copyright Office, Compendium of U.S. Copyright Office Practices
  (3d ed. 2017) .................................................................................. 8, 9, 10

Defendant Epic Games, Inc. ("Epic Games") submits this memorandum in support of its motion to dismiss pursuant to Federal Rule 12(b)(6) and special motion to strike pursuant to California Code of Civil Procedure 425.16 Plaintiff Terrence Ferguson's ("Plaintiff") Second Amended Complaint (Dkt. No. 44) ("Complaint").

## I.   INTRODUCTION

Plaintiff's lawsuit is fundamentally at odds with free speech principles as it attempts to impose liability, and thereby chill creative expression, by claiming rights that do not exist under the law.  No one can own a dance step.  Copyright law is clear that individual dance steps and simple dance routines are not protected by copyright, but rather are building blocks of free expression, which are in the public domain for choreographers, dancers, and the general public to use, perform, and enjoy.

Yet, each of Plaintiff's claims is based on his assertion that he has a monopoly on a side step with accompanying swinging arm movement that is then repeated on the other side (the "Dance Step"), and thus can prevent others from using it.  Specifically, he argues that the Dance Step appeared in Epic Games' massive, complex battle royale video game, *Fortnite*, as the "Swipe It" emote (one of hundreds of tiny customizations allowing players' avatars to celebrate on the battlefield).  To be clear, he does not claim that *Fortnite's* avatars resemble him or that any other parts of the fanciful game infringe his rights.  His claims are based solely on the Dance Step, which is why this motion to dismiss should be granted for several reasons.

*First*, Plaintiff's copyright infringement claims should be dismissed because he cannot establish substantial similarity between his alleged work and *Fortnite*.  When considering whether two works are substantially similar, the Ninth Circuit requires courts to filter out the unprotectable elements, and then compare any protectable expression that remains.  This analysis is critical to the resolution of this case as copyright does not protect individual dance steps or simple dance routines.  This is clear from the long-standing tradition that the building blocks of expression— including words and short phrases, geometric shapes, colors, and dance steps—are not

1   copyrightable as protecting them would prevent others from creating new works.  In
2   the dance context, this is apparent from (a) the legislative history of the Copyright
3   Act, which expressly states that "simple [dance] routines" are not copyrightable; (b)
4   the Copyright Office's regulations, which do not permit individual dance steps or
5   simple routines to be registered for copyright protection; and (c) Ninth Circuit case
6   law holding that such elements are not protectable, but rather should be free for all to
7   use.  Also, copyright does not protect mere ideas and concepts, which are free for all
8   to use, but rather only the expression of those ideas.  The Dance Step is just such an
9   unprotectable idea as Ninth Circuit courts have held in similar situations involving
10  movements, choreography, and poses.  As the Dance Step is not protectable, there is
11  nothing to compare to *Fortnite*, and the works necessarily are not substantially
12  similar.

13      Moreover, even without this filtering, comparing the deposit copy that Plaintiff
14  submitted to the Copyright Office and *Fortnite* shows that there is no substantial
15  similarity.  The deposit copy is a handheld video of Plaintiff on the top of a Jeep
16  freestyling simple dance steps, only one of which Plaintiff has asserted in this
17  lawsuit—a tacit admission that none of the other steps appear in *Fortnite*.  *Fortnite*, by
18  contrast, is a complex battle royale video game with myriad characters, settings, and
19  movements, none of which Plaintiff has accused of infringement.  As a result, the
20  works cannot be substantially similar as a whole.

21      Similarly, even focusing solely on the Dance Step itself, it is different from
22  Swipe It.  As shown by the accompanying video clip, the Dance Step consists of a
23  side step to the right while swinging the left arm horizontally across the chest to the
24  right, and then reversing the same movement on the other side.  Declaration of Dale
25  Cendali, dated February 11, 2019 ("Cendali Decl."), Ex. D.  By contrast, as shown in
26  another video clip, Swipe It consists of (1) varying arm movements, sometimes using
27  a straight, horizontal arc across the chest, and other times starting below the hips and
28  then traveling in a diagonal arc across the body, up to the shoulder, while pivoting

side to side on the balls and heels of the feet, (2) a wind up of the right arm before swiping, and (3) a rolling motion of the hands and forearms between swipes. *Id.* Ex. E. Moreover, whereas the torso, shoulders and head face forward while the ribs move side-to-side in the Dance Step, the torso, shoulders, and head turn to the side while the ribs remain in place in Swipe It. The Dance Step also is performed at a significantly quicker tempo than Swipe It. Finally, whereas Plaintiff uses the Dance Step while listening and dancing to music with his friends, Swipe It's role in *Fortnite* is to allow players to express themselves on the battlefield. These differences are particularly pronounced given how short the Dance Step and Swipe It are. The works simply are not substantially similar.

***Second***, Plaintiff's non-copyright claims are equally unavailing. As a threshold matter, under California's anti-SLAPP statute, when state law claims are asserted against an expressive work, like *Fortnite*, in an attempt to chill the valid exercise of the work's authors' free speech rights, as is the case here, it is the ***plaintiff's*** burden to prove a probability of prevailing on the merits.[1] Plaintiff cannot do so:

- All of the non-copyright claims involve the same Dance Step and seek to address the same copying as Plaintiff's copyright claims and, thus, they are preempted by the Copyright Act and should be dismissed for this reason alone.

- Plaintiff's right of publicity claims also are barred by the First Amendment under the Transformative Use test as *Fortnite* has distinctive and expressive content beyond alleged use of the step.

- Plaintiff's unfair competition and trademark claims similarly are barred by the First Amendment based on *Rogers v. Grimaldi* principles because the Swipe It emote is artistically relevant to *Fortnite*, and Plaintiff does not point to any expressly misleading conduct by Epic Games beyond its alleged use of the Dance Step. Moreover, Plaintiff cannot state a claim for trademark dilution.

***Finally***, although this Court need not reach Plaintiff's requested remedies if his

---

[1]   The Lanham Act claims fail for the same reasons as the state claims.

claims are dismissed for the reasons above, Plaintiff's overreaching extends to the remedies he seeks as well. For example, punitive damages are not available for Copyright Act or Lanham Act claims. Similarly, California's unfair competition law only provides for the award of restitution, not general damages. And, because Plaintiff only applied to register his copyrights after the alleged infringement commenced, attorney's fees are not available on his copyright claims.

For the reasons below, Epic Games respectfully requests that Plaintiff's Complaint be dismissed. Further, as Plaintiff amended his complaint a second time knowing the bases for this Motion, Epic Games requests that the dismissal be with prejudice.

## II.   STATEMENT OF ALLEGED FACTS

Plaintiff alleges that he created a dance in 2011 "while listening and dancing to music with his friends." Compl. ¶ 12. To register his dance with the Copyright Office, Plaintiff submitted a handheld video of himself on a Jeep. Cendali Decl. Ex. A.[2] The Dance Step appears 16 seconds into the video. *Id.* It is a simple side step with an accompanying swinging arm movement and movement of the ribs that is then repeated on the other side and is performed at a quick tempo. *Id.*

Plaintiff alleges that Epic Games appropriated the Dance Step in its *Fortnite* video game. Compl. ¶ 1. In *Fortnite*, up to 100 players, alone, in pairs, or groups, compete to be the last player or group alive. *Id.* ¶ 21. The game features an extensive world, in which players explore, build, and destroy, and also battle against each other via player-to-player combat. *See* Cendali Decl. Ex. C. Players choose to represent themselves in the game world by picking an avatar and customizing it to better represent them in the game. *Fortnite*'s avatars feature a variety of human features, non-human features (such as a tomato head or animal head), costumes, and weapons.

---

[2]   The Complaint also references a music video, Compl. ¶ 2, but that is not the work Plaintiff has attempted to register with the Copyright Office. Cendali Decl. Ex. A. Thus, it is irrelevant.

1

*Id.* They do not resemble Plaintiff, as is shown below:










After *Fortnite's* release in 2017, Epic Games continued to make new content available as part of different "Seasons." Compl. ¶ 31. This includes "emotes," which are movements that an avatar performs to express emotions in the game. *Id.* ¶ 25. There have been over a hundred emotes. Plaintiff alleges that the "Swipe It" emote—which was not included as an emote option until Season 5 in 2018 and is not available for download in the current *Fortnite* Season—violates his rights. *Id.* ¶ 31.

Using Swipe It, which is performed at a moderate tempo, an avatar pivots on the balls and heels of its feet (not stepping side to side). Cendali Decl. Ex. E. At the same time, the avatar swipes its arms back and forth, sometimes using a straight, horizontal arc across the chest, and other times starting below the hips and then traveling in a diagonal arc across the body, up to the shoulder (the arm movements are not consistently across the avatar's chest). *Id.* The torso of the avatar turns to the side in a three-quarter view as the arm swipes, but the ribs remain in place. *Id.* The emote also features bent wrists and a rolling motion of the hands and forearms. *Id.*

## III.  LEGAL STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The Court must disregard allegations that are legal conclusions, even when disguised as facts." *Hall v. Swift*, No. 17 Civ. 6882, 2018 WL

2317548, at *3 (C.D. Cal. Feb. 13, 2018).  It, however, may consider works referenced in the Complaint.  *See Zindel v. Fox Searchlight Pictures, Inc.*, No. 18 Civ. 1435, 2018 WL 3601842, at *3 (C.D. Cal. July 23, 2018); Req. J. Notice, at 1.  As discussed below, Plaintiff cannot plead facts sufficient to support his claims.

Moreover, with regard to Plaintiff's state law claims, his pleading failures violate California's anti-SLAPP statute, which subjects to a special motion to strike any "cause of action against a person arising from any act of that person in furtherance of the person's right of . . . free speech . . . in connection with a public issue."  Cal. Civ. Proc. Code § 425.16(b)(1).  Anti-SLAPP motions require a two-part analysis, both of which are satisfied here.  *First*, the court determines whether "the challenged cause of action arises from activity protected under the statute."  *Baez v. Pension Consulting Alliance, Inc.*, No. 2:17 Civ. 01938, 2017 WL 9500979, at *2 (C.D. Cal. July 20, 2017).  "California courts have interpreted this piece of the defendant's threshold showing rather loosely . . . and have held that a court must generally presume the validity of the claimed constitutional right in the first step of the anti-SLAPP analysis."  *Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 422 (9th Cir. 2014) (internal quotation marks omitted).[3]  Here, the first step of the analysis is straightforward: the United States Supreme Court has held that "video games qualify for First Amendment protection," *Brown v. Entm't Merchants Ass'n*, 131 S. Ct. 2729, 2733 (2011),[4] and all of Plaintiff's claims hinge on *Fortnite's* inclusion of the Dance Step, which Plaintiff touts as being a matter of public interest.  *See, e.g.*, Compl. ¶¶ 1–3.  Thus, Plaintiff's claims are based on acts taken in furtherance of Epic Games' free speech rights.  *Second*, the burden shifts to

---

[3]  Courts routinely find creative works, like video games, satisfy step one.  *See Cusano v. Klein*, 473 F. App'x 803, 804 (9th Cir. 2012) (collecting cases finding first prong satisfied by television programs and video games); *see also Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1009 (9th Cir. 2017) (photographs); *Arenas v. Shed Media U.S. Inc.*, 881 F. Supp. 2d 1181, 1195 (C.D. Cal. 2011) (television); *de Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 856 (Ct. App. 2018) (same).

[4]  *See also E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008) (*Grand Theft Auto: San Andreas* video game protected).

1   the plaintiff to "demonstrate[] a probability of prevailing on the merits of its" claims.

2   *GLAAD*, 742 F.3d at 425.  Plaintiff cannot satisfy his burden.  *See infra* 15–22.

3   **IV.    ARGUMENT**

4        **A.    Plaintiff Cannot State a Claim for Copyright Infringement**

5        Plaintiff's first and second causes of action assert direct and contributory

6   copyright infringement, respectively.  To state a claim of copyright infringement,

7   Plaintiff must allege "(1) ownership of a valid copyright, and (2) copying of

8   constituent elements of the work that are original."  *Feist Pubs., Inc. v. Rural Tel.*

9   *Serv. Co.*, 499 U.S. 340, 361 (1991).  Moreover, contributory infringement requires an

10  underlying direct infringement.  *Boost Beauty, LLC v. Woo Signatures, LLC*, No. 2:18

11  Civ. 02960, 2018 WL 5099258, at *5 (C.D. Cal. Oct. 15, 2018).

12       Assuming *arguendo* for the purposes of this Motion that Plaintiff owns a valid

13  copyright, his copyright claims should be dismissed because he cannot satisfy the

14  second element as the works are not "substantially similar."  To determine substantial

15  similarity, courts in this Circuit use a two-part analysis consisting of the "extrinsic

16  test" and the "intrinsic test."  The extrinsic test requires courts to "'filter out' the

17  unprotectable elements of the plaintiff's work—primarily ideas and concepts, material

18  in the public domain, and *scènes à faire* (stock or standard features that are commonly

19  associated with the treatment of a given subject)"—and then compare the "protectable

20  elements that remain" to "corresponding elements of the defendant's work to assess

21  similarities in the objective details of the works."  *Rentmeester v. Nike, Inc.*, 883 F.3d

22  1111, 1118 (9th Cir. 2018).  "The intrinsic test requires a more holistic, subjective

23  comparison of the works to determine whether they are substantially similar in 'total

24  concept and feel.'"  *Id.*  If either test fails, there is no substantial similarity.

25       A motion to dismiss a copyright claim should be granted where, after

26  comparing the works, the extrinsic test is not satisfied.  *See id.*; *Wild v. NBC*

27  *Universal*, 513 F. App'x 640, 642 (9th Cir. 2013) (affirming dismissal as "Plaintiff

28  cannot satisfy the extrinsic test").  Indeed, the Ninth Circuit routinely affirms

1   dismissal of such decisions.  *See, e.g.*, *Rentmeester*, 883 F.3d at 1121 (affirming

2   dismissal where photographs were not substantially similar despite similar subject

3   matter and pose); *White v. Twentieth Century Fox Corp.*, 572 F. App'x 475, 477 (9th

4   Cir. 2014) (affirming dismissal where "most of the alleged similarities [between films]

5   are not protectable"); *Thomas v. Walt Disney Co.*, 337 Fed. App'x 694, 694 (9th Cir.

6   2009) (affirming dismissal because "literary work was not 'substantially similar' to

7   defendants' animated movie"); *Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th

8   Cir. 1945) ("There is ample authority for holding that when the copyrighted work and

9   the alleged infringement are both before the court, capable of examination and

10   comparison, noninfringement can be determined on a motion to dismiss.").

11       Here, Plaintiff conclusorily asserts that the "'Swipe It' emote is identical to

12   Ferguson's Milly Rock dance."  Compl. ¶ 32.  Yet, "the works themselves supersede

13   any contrary allegations, conclusions or descriptions of the works contained in the

14   pleadings."  *Chey v. Pure Flix Entm't LLC*, No. 16 Civ. 164362, 2017 WL 5479640,

15   at *4 (C.D. Cal. Feb. 10, 2017).  Once the unprotectable Dance Step is filtered out, the

16   works are not substantially similar as a matter of law.

17               1.   Plaintiff's Dance Step Is Not Protected by Copyright

18       The works are not substantially similar for the principal reason that the Dance

19   Step is not protected by copyright and only a work's protectable elements can

20   establish substantial similarity.  Courts recognize that there are elements of works that

21   are not protectable because they involve the building blocks of creative expression

22   that, if protected; would inhibit the creation of new works.  For example, "words and

23   short phrases" are not protectable.  *Zhang v. Heineken N.V.*, No. 08 Civ. 06506, 2010

24   WL 11596643, at *4 (C.D. Cal. Sept. 29, 2010).  This is because "even if the word or

25   short phrase is novel or distinctive or lends itself to a play on words," it contains "a *de*

26   *minimis* amount of authorship."  U.S. Copyright Office, Compendium of U.S.

27   Copyright Office Practices § 313.4(C) (3d ed. 2017).  Similarly, "variations of long-

28   established Chinese word characters" were not protectable as doing so would

"effectively give [plaintiff] a monopoly on renditions of these five Chinese characters." *Zhang*, 2010 WL 11596643, at *5 (dismissal on the pleadings). "[B]lank forms which do not convey information are not copyrightable" as they are where information is recorded, and do not convey information themselves. *Bibbero Sys., Inc. v. Colwell Sys., Inc.*, 893 F.2d 1104, 1106 (9th Cir. 1990). And "mere changes in color are generally not subject to copyright protection." *Express, LLC v. Forever 21, Inc.*, No. 09 Civ. 4514, 2010 WL 3489308, at *6 (C.D. Cal. Sept. 2, 2010).[5]

  This principle applies with equal force to the field of dance. The Copyright Act of 1976's list of works of authorship includes only "choreographic works." 17 U.S.C. § 102(a)(4). As explained in the Compendium of U.S. Copyright Office Practices—the Copyright Office's substantive manual for its staff on the contours of copyright law and Office policies—choreography is the "composition and arrangement of 'a related series of dance movements and patterns organized into a coherent whole.'" Compendium § 805.1 (quoting *Horgan v. Macmillan, Inc.*, 789 F.2d 157, 161 (2d Cir. 1986)). Thus, the Copyright Office would register a "choreographed music video for a song titled 'Made in the USA'" if the dance "is a complex and intricate work performed by a troupe of professional dancers." *Id.* § 805.5(A).

  Yet, in recognition that the constituent parts of a choreographic work must be available for others to use, Congress was explicit that "simple routines" are neither choreographic works nor copyrightable, H.R. Rep. 94-1476, at 53, and the Copyright

---

[5]  *See also Lorenzana v. S. Am. Rests. Corp.*, 799 F.3d 31, 34 (1st Cir. 2015) (affirming Rule 12(b)(6) dismissal as recipe instructions and name not protectable); *Southco, Inc. v. Kanebridge Corp.*, 390 F.3d 276, 287 (3d Cir. 2004) ("part numbers" not protectable); *CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504, 1520 (1st Cir. 1996) (holding "ordinary employment phraseology" not protectable); *Aaron Basha Corp. v. Felix B. Vollman, Inc.*, 88 F. Supp. 2d 226, 230 (S.D.N.Y. 2000) (not protectable to use "decorative features . . . commonly used throughout the jewelry business," such as "precious metals, gemstones, and enamel"); *Skinder-Strauss Assocs. v. Mass. Continuing Legal Educ., Inc.*, 914 F. Supp. 665, 674 (D. Mass. 1995) ("a standard calendar, a list of important holidays, a map of Massachusetts, a national map including time zones, and a date calculation chart" not protectable); *DBC of N.Y., Inc. v. Merit Diamond Corp.*, 768 F. Supp. 414, 416 (S.D.N.Y. 1991) ("Familiar symbols or designs" not protectable).

1   Office's Compendium explains that "[i]ndividual movements or dance steps by
2   themselves are not copyrightable."  Compendium § 805.5(A).  Thus, although the
3   "Made in the USA" dance above might be registered as a whole, if "[d]uring the
4   chorus, the dancers form the letters 'U, S, A' with their arms . . . the Office would
5   reject a claim limited to the 'U, S, A' gesture."  *Id.*  Other examples of unprotectable
6   movements include "the basic waltz step, the hustle step, the grapevine, or the second
7   position in classical ballet."  *Id.*  Further, the Copyright Office has made clear that
8   "short dance routines consisting of only a few movements or steps with minor linear
9   or spatial variations, *even if the routine is novel or distinctive*," are not protectable.  *Id.*
10  (emphasis added).

11       This approach makes sense as "[i]ndividual dance steps and short dance
12  routines are the building blocks of choreographic expression, and allowing copyright
13  protection for these elements would impede rather than foster creative expression."
14  *Id.* (citing *Horgan*, 789 F.2d at 161).  Thus, "individual elements of a dance are not
15  copyrightable for the same reason that individual words, numbers, notes, colors, or
16  shapes are not protected by the copyright law."  *Id.* (citing 37 C.F.R. § 202.1).  As
17  discussed above, courts routinely hold that these types of elements are unprotectable,
18  and will dismiss copyright claims based on them at the pleadings stage.  *See supra* 8.

19       In applying this standard, the Copyright Office's Compendium provides the
20  following strikingly on-point example of an unprotectable dance: "Butler Beauchamp
21  is a wide receiver for a college football team.  Whenever he scores a touchdown,
22  Butler performs a celebratory dance in the endzone."  Compendium (Third)
23  § 805.5(A).  In this example, although the dance is comprised of multiple movements
24  of multiple body parts, it is not protectable because it "merely consists of a *few*
25  *movements of the legs, shoulders, and arms*."  *Id.* (emphasis added).  Likewise, the
26  Copyright Office refused registration of a dance routine by world-renowned modern
27  dance company Pilobolus titled "Five-Petal Flower," which it described as:

28

On the left-hand side is the silhouette of a woman facing the right side of the screen. On the right-hand side several people quickly tumble onto the stage, forming the silhouette of a five-petal flower with their intertwined bodies. Simultaneously, the silhouette of a giant hand moves from the left to the right side of the screen, and appears to pull at the top of the five-petal flower. The hand then points at the flower formation in a common gesture that means "stay put." The flower formation stays still for the remainder of the video. The hand moves back to the left side of the screen and appears to pluck off the head of the woman, who shrugs her arms and slightly kicks her legs outward as if stunned. Her hands reach for the headless top of her body to feel for the head, and then return to her sides. The giant hand moves over the woman's body and her head reappears; the hand moves again and most of her body disappears underneath the hand. The woman remains near-motionless before the video abruptly ends.

Letter from U.S. Copyright Office to Puo-I "Bonnie" Lee (dated July 14, 2016), *available at* https://www.copyright.gov/rulings-filings/review-board/docs/five-petal-flower.pdf. Despite the detailed description of Pilobolus' dance, the Copyright Office concluded that the routine was "*de minimis*" because it consisted of "simple movements" that were "insufficient to enable copyright registration." *Id.* at 4.

The Copyright Office's guidance is critical as the Ninth Circuit has held that, "[w]hen interpreting the Copyright Act," courts should "defer to the Copyright Office's interpretations," *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1041 (9th Cir. 2014), because of its "body of experience and informed judgment." *Garcia v. Google, Inc.*, 786 F.3d 733, 742 (9th Cir. 2015) (en banc). For example, the Copyright Office has determined that "examples of works not subject to copyright" include "[w]ords and short phrases." Material Not Subject to Copyright, 37 C.F.R. § 202.1(a) (2018). Courts routinely dismiss cases on the pleadings relying solely on this regulation. *See Zekkariyas v. Universal Music-MGB Songs*, No. 11 Civ. 2912, 2011 WL 13220325, at *2 (C.D. Cal. June 6, 2011) (granting Rule 12(b)(6) motion based solely on regulation); *Zhang*, 2010 WL 11596643, at *5 (quoting regulation for proposition that "'words and short phrases' are not copyrightable"); *see also Southco*, 390 F.3d at 286 (same); *CMM*, 97 F.3d at 1520 (same); *cf. Trenton v. Infinity Broad. Corp.*, 865 F. Supp. 1416, 1426 (C.D. Cal. 1994) (same); *Pelt v. CBS, Inc.*, No. 92

1   Civ. 6532, 1993 WL 659605, at *3 (C.D. Cal. Oct. 25, 1993) (same).[6]

2        Consistent with the foregoing, in *Bikram's Yoga College of India, L.P. v.*

3   *Evolation Yoga, LLC*, the court held that a "Sequence of 26 yoga poses" was too

4   simple to qualify as a choreographic work.  No. 2:11 Civ. 5506, 2012 WL 6548505, at

5   *4 (C.D. Cal. Dec. 14, 2012).  On appeal, the Ninth Circuit acknowledged the

6   touchstones of dance copyright discussed above, but focused its analysis on the fact

7   that the yoga poses were uncopyrightable under 17 U.S.C. § 102(b).  *Bikram's Yoga*

8   *Coll. of India, L.P. v. Evolation Yoga, LLC*, 803 F.3d 1032, 1043 (9th Cir. 2015).

9        Plaintiff's Dance Step is even simpler, shorter, and less protectable than the 26

10  poses in *Bikram's*, the endzone dance in the Copyright Office's example, and

11  Pilobolus' intricate modern dance piece.  It consists of merely a side step with an

12  accompanying swinging arm movement that is then repeated on the other side.  *See*

13  *supra* 4.  Such a simple step is not protectable.  Nor should it be as, to hold otherwise

14  would cause every person who performs the step on television, at a wedding, or in any

15  other public place to be susceptible to a copyright infringement claim.

16              2.    Plaintiff's Dance Step is a Mere Idea

17       In addition to being unprotectable as a building block of expression, the idea of

18  a side step with accompanying swinging arm movement is a classic unprotectable

19  idea.  *See* 17 U.S.C. § 102(b) ("In no case does copyright protection . . . extend to any

20  idea . . . .");  *Bikram's*, 803 F.3d at 1040 (sequence of yoga steps unprotectable under

21  Section 102(b)).  For example, in *Rentmeester*, the Ninth Circuit affirmed a Rule

22  12(b)(6) dismissal due to a lack of substantial similarity, holding that the plaintiff did

23  not own the "general 'idea' or 'concept' . . . of [Michael] Jordan in a leaping, *grand*

24  *jeté*-inspired" movement.  883 F.3d at 1121 (movement at issue shown below); *see*

25  *also Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 774 (9th Cir. 2018) (dolphins'

26

27  _____

28  [6]   *Cf. Naruto v. Slater*, No. 15 Civ. 04324, 2016 WL 362231, at *4 (N.D. Cal. Jan. 28, 2016) (relying on Copyright Office analysis of authorship for copyrightability of photograph taken by a monkey), *aff'd*, 888 F.3d 418 (9th Cir. 2018).

pose unprotectable).  And in *Reece v. Island Treasures Art Gallery, Inc.*, despite the fact that the parties' works showed the same dance movement (shown below), the court held that the "idea of a hula dancer performing an 'ike movement in the hula kahiko style from the noho position is not protected."  468 F. Supp. 2d 1197, 1206 (D. Haw. 2006) (holding works were not substantially similar).[7]

   

**_Rentmeester_ Movement**     **_Reece_ Movement[8]**
883 F.3d at 1126

### 3.  The Works Are Not Substantially Similar

Once "the unprotectable elements have [been] identified" and "filtered," the works are "considered as a whole."  *Apple Comput., Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994); *See v. Durang*, 711 F.2d 141, 144 (9th Cir. 1983) (analyzing works "as a whole" to consider similarities "in context").  Here, there are no protectable elements to consider at this stage as the Dance Step is not protectable and merely an idea, which alone requires dismissal.  *See Christianson*, 149 F.2d at 204 (affirming grant of motion to dismiss where only similarities between two maps

---

[7]  *See also Blehm v. Jacobs*, 702 F.3d 1193, 1201 (10th Cir. 2012) ("a copyright owner has no monopoly over the idea of a muscular doll in a standard pose"); *Cabell v. Sony Pictures Entm't, Inc.*, 425 F. App'x 42 (2d Cir. 2011) ("brandishing a blow dryer as a weapon" and "fighting poses" were "unprotectable ideas"); *Mattel, Inc. v. Azrak-Hamway Int'l, Inc.*, 724 F.2d 357, 360 (2d Cir. 1983) ("Though the dolls' bodies are very similar, nearly all of the similarity can be attributed to the fact that both are artist's renderings of the same unprotectable idea—a superhuman muscleman crouching in what since Neanderthal times has been a traditional fighting pose."); *Int'l Biotical Corp. v. Associated Mills, Inc.*, 239 F. Supp. 511, 514 (N.D. Ill. 1964) (various poses were unprotectable ideas).

[8]  No. 06 Civ. 00489 (D. Haw.) (Dkt. 63-14, Ex. G) (Dkt. 63-15, Ex. H).

were unoriginal or mere ideas); *Hall*, 2018 WL 2317548, at *8 (granting Rule 12(b)(6) motion where "only thing that Plaintiffs allege Defendants copied" in Taylor Swift's song was "too brief, unoriginal, and uncreative to warrant protection").

Moreover, Plaintiff tacitly admits the works' dissimilarity as nowhere in the Complaint does he suggest that any other part of his alleged "choreography" appears in *Fortnite*, nor does he suggest any part of *Fortnite* is similar to his work other than the Swipe It emote—not *Fortnite's* battle format, characters, setting, theme, or mood. Plaintiff's entire case is based solely on his Dance Step as he does not allege the game's avatars resemble him, nor could he.

Yet, in addition to lacking copyright protection, the Dance Step is different from Swipe It. The Dance Step consists of a side step to the right while swinging the left arm horizontally across the chest to the right, and then reversing the same movement on the other side—namely, a side step to the left while swinging the right arm horizontally across the chest to the left. Cendali Decl. Ex. D. By contrast, Swipe It consists of (1) varying arm movements, sometimes using a straight, horizontal arc across the chest, and other times starting below the hips and then traveling in a diagonal arc across the body, up to the shoulder, while pivoting on the balls and heels of the feet, (2) a wind up of the right arm before swiping, and (3) a rolling motion of the hands and forearms between swipes. *Id.* Ex. E. Moreover, whereas in the Dance Step, the torso, shoulders, and head face frontward while the ribs move from side to side with the arm movements; in Swipe It, the torso, shoulders, and head turn to the side with the arm movement, and the ribs remain in place. The Dance Step also is performed at a significantly quicker tempo than Swipe It. Finally, whereas Plaintiff uses the Dance Step in connection with "listening and dancing to music with his friends," Compl. ¶ 12, Swipe It allows players to express themselves on the battlefield and "to personalize their *Fortnite* experience." *Id.* ¶ 25.[9] Thus, Counts I and II should

---

[9]   Even if the Dance Step had a small sliver of copyright protection, such a thin copyright would require a showing of "virtually identical" copying. *Century Tile,*

1   be dismissed as the works are not substantially similar.

2       **B.      Plaintiff's Remaining Claims Are Preempted by the Copyright Act**

3       Plaintiff's right of publicity (Counts III and IV), unfair competition (Count V),

4   and trademark infringement (Counts VI and VII) claims are preempted by the

5   Copyright Act and, thus, should be dismissed for this reason alone.  The Copyright

6   Act provides the exclusive remedy for "all legal or equitable rights that are equivalent

7   to any of the exclusive rights within the general scope of copyright."  17 U.S.C.

8   § 301(a).  A state law claim is preempted if (1) the work is within the type of works

9   protected by copyright and (2) the claim seeks to vindicate rights equivalent to those

10  protected by copyright law.  *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137

11  (9th Cir. 2006) (right of publicity claim preempted).

12      As to the first prong, Plaintiff's non-copyright claims are predicated on the

13  same Dance Step that forms the basis of his copyright claim.  *See* Compl. ¶¶ 67, 75,

14  83, 91, 99, 106 (claims based on "use of Milly Rock dance").  As choreography is the

15  subject matter of copyright, 17 U.S.C. § 102(a)(4), the first prong is satisfied.

16  *Cusano*, 473 F. App'x at 804 (first prong satisfied by types of works listed in 17

17  U.S.C. § 102(a)).  Indeed, the plaintiff in *Lions Gate Entertainment Inc. v. TD*

18  *Ameritrade Services Co.* raised the same claims that Plaintiff does here, alleging

19  unfair competition and trademark infringement ***based on the use of the dance lift***

20  from the film *Dirty Dancing* where Patrick Swayze lifts Jennifer Grey over his head.

21  170 F. Supp. 3d 1249, 1254 (C.D. Cal. 2016).  The court found the plaintiff's claims

22  preempted.  *Id.* at 1264 (dance lift was subject matter of copyright).[10]

23      As to the second prong, no extra element makes Plaintiff's claims different

24  _____

    *Inc. v. Hirsch Glass Co.*, 467 F. App'x 651, 652 (9th Cir. 2012).  In such

25  circumstances, "even relatively small differences . . . may exclude copyright

    infringement."  *Masterson Mktg., Inc. v. KSL Recreation Corp.*, 495 F. Supp. 2d

26  1044, 1048 (S.D. Cal. 2007).

27  [10]  Even if the Dance Step is not copyrightable, it still falls "within the 'subject matter

    of copyright' for the purposes of preemption analysis" as even unprotected subject

28  matter satisfies the first prong.  *Entous v. Viacom Int'l, Inc.*, 151 F. Supp. 2d 1150,

    1159 (C.D. Cal. 2001).

from a copyright claim as the allegedly infringing acts are described as the quintessential act of copyright infringement: "copying." Compl. ¶¶ 67, 75, 83, 99. In fact, Plaintiff's unfair competition claim is expressly based on his allegation of Epic Games "misappropriating Ferguson's copyright." *Id.* ¶ 83. Such right of publicity claims, whether based in the common law or California Civil Code § 3344; unfair competition claims under California Business and Professional Code; and common law trademark claims are preempted. *See Maloney*, 853 F.3d at 1019 (affirming grant of special motion to strike and dismissal of right of publicity and unfair competition claims where use was not "independent of the display, reproduction, and distribution of the copyrighted material"); *Lewis v. Activision Blizzard, Inc.*, 634 F. App'x 182, 184 (9th Cir. 2015) (affirming dismissal due to preemption of statutory right of publicity claim based on use in video game); *Laws*, 448 F.3d at 1144 (common law and statutory right of publicity claims preempted); *Lions Gate*, 170 F. Supp. 3d at 1267 (common law trademark infringement claim preempted).

Moreover, the "Supreme Court has extended this principle of copyright preemption to the Lanham Act and federal trademark protection." *Lions Gate*, 170 F. Supp. 3d at 1264 (citing *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 33–38 (2003)). Plaintiff's federal trademark claim is based on "Defendant's unauthorized use of the Milly Rock device in *Fortnite*," Compl. ¶ 91, which he argues was copied "to create the false impression that Epic started" the dance. *Id.* ¶ 38. The Supreme Court, however, has held that the Lanham Act's phrase "origin of goods" "refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods." *Dastar*, 539 U.S. at 37. Thus, when a "claim is more accurately conceived of as attacking unauthorized copying," courts in this Circuit routinely dismiss such claims. *Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d 1246, 1250 (9th Cir. 2017) (affirming dismissal); *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1144 (9th Cir. 2008) (same); *Marcus v. ABC Signature Studios, Inc.*, 279

F. Supp. 3d 1056, 1072 (C.D. Cal. 2017) (granting Rule 12(b)(6) motion where plaintiff alleged defendants "have made, and will continue to make a false and misleading designation about the origin of [*Black-ish*] in violation of the Lanham Act" as it was "a duplicate of his copyright claim").[11]   Counts III–VII are preempted and should be dismissed.

### C.   Plaintiff's Right of Publicity Claims Are Barred by the First Amendment

Although Plaintiff resides in New Jersey,[12] Compl. ¶ 5, he relies on California law for his right of publicity claims (Counts III and IV).  Whether under New Jersey or California law,[13] his right of publicity claims fail because *Fortnite* is protected by the First Amendment when the Transformative Use test that both states apply is considered.  A right of publicity claim does not lie where a "celebrity likeness is one of the 'raw materials' from which an original work is synthesized" or the "product containing a celebrity's likeness is so transformed that it has become primarily the defendant's own expression rather than the celebrity's likeness."  *Winter v. DC Comics*, 30 Cal. 4th 881, 888 (2003); *Mitchell v. Cartoon Network, Inc.*, No. 15 Civ.

---

[11]  *See also Griffin v. Peele*, No. 17 Civ. 01153, 2017 WL 8231241, at *7 (C.D. Cal. Oct. 18, 2017); *Aquarius Broad. Corp. v. Vubiquity Entm't Corp.*, No. 2:15 Civ. 01854, 2016 WL 7165728, at *4 (C.D. Cal. June 30, 2016); *Deckers Outdoor Corp. v. J.C. Penney Co.*, 45 F. Supp. 3d 1181, 1185 (C.D. Cal. 2014).

[12]  Plaintiff's original Complaint and First Amended Complaint pleaded that Plaintiff "resides in Brooklyn, New York."  Dkt. Nos. 1, 17 ¶ 5.  During the parties' required meet and confer pursuant to Local Rule 7-3 on January 25, 2019, Epic Games explained that, as a resident of New York, New York law would apply to Plaintiff's right of publicity claims.  Plaintiff then amended his Complaint to allege that he resides in New Jersey, Compl. ¶ 5, in an apparent attempt to avoid application of New York law, which only protects four things, none of which are a dance step: "name, portrait, picture or voice." N.Y. Civ. R. L. § 51.  For the reasons explained above, Plaintiff's strategy is unavailing.

[13]  Under California choice of law principles, New Jersey law would apply here as that is where Plaintiff resides.  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012); *Lightbourne v. Printroom Inc.*, 307 F.R.D. 593, 599 (C.D. Cal. 2015) ("It is well established in California that the intellectual property owner's resident state has an interest in applying its own law to [a right of publicity] injury" and "a plaintiff's residency is often determinative . . . .").  This Court, however, need not decide the issue as the claim fails under both states' laws.

5668, 2015 WL 12839135, at *4 (D.N.J. Nov. 20, 2015) (relying on California's Transformative Use test to decide whether New Jersey right of publicity claim violated the First Amendment).  To apply the test, courts "examine and compare the allegedly expressive work with the [use of the plaintiff's identity] to discern if the defendant's work contributes significantly distinctive and expressive content."  *Kirby v. Sega of Am., Inc.*, 144 Cal. App. 4th 47, 61 (2006).  "When the value of the work comes principally from some source other than the fame of the celebrity—from the creativity, skill, and reputation of the artist—it may be presumed that sufficient transformative elements are present to warrant First Amendment protection."  *Arenas*, 881 F. Supp. 2d at 1191, *aff'd*, 462 F. App'x 709 (9th Cir. 2011).  Thus, the "potential reach of the transformative use defense is broad."  *Id.* at 1190.

The *Kirby* decision is particularly instructive.  In that case, the plaintiff alleged that her likeness had been used in Sega's *Space Channel 5* video game to create a character named Ulala.  144 Cal. App. 4th at 51.  The court held that Ulala was a transformative use, relying primarily on differences between the plaintiff's physical characteristics and Ulala's such as their size, physique, hairstyle, costumes, and outfits.  *Id.* at 59.  The court also considered the "setting for the game" as Ulala was "a space-age reporter in the 25th century," and the plaintiff was not.  *Id.*

Similarly, here, Plaintiff has made no allegations that Epic Games' use of his "likeness" goes beyond Swipe It.  Critically, Swipe It can be used with any *Fortnite* character, none of which Plaintiff alleges share similar physical characteristics to him. *See supra* 5.  And Plaintiff has not asserted that he has appeared in a similar setting to *Fortnite*, namely he has not fought in a battle royale using weapons to kill opponents. Compl. ¶ 21.  These additional elements make the Swipe It emote a transformative use under *Kirby*.  144 Cal. App. 4th at 59; *see also Sivero v. Twentieth Century Fox Film Corp.*, No. B266469, 2018 WL 833696, at *10 (Cal. Ct. App. Feb. 13, 2018) ("Simpsonized" character with different physical characteristics than plaintiff was transformative use); *Mitchell*, 2015 WL 12839135, at *5 (character who resembled

1    Plaintiff but did "not match the Plaintiff in appearance" and whose story did not

2    "exactly track Plaintiff's biographical details" was transformative use).  As *Fortnite*

3    does not contain a "literal recreation of Plaintiff" but rather "added something new,"

4    *see Mitchell*, 2015 WL 12839135, at *5–6, its use of the Dance Step is transformative.

5         Further, Swipe It is a miniscule part of *Fortnite*.  *See supra* 4.  This also

6    supports a finding of transformativeness.  For example, in *Arenas*, the use of a

7    likeness that was "incidental to the show's plot" was transformative.  881 F. Supp. 2d

8    at 1191(granting anti-SLAPP motion).  In *de Havilland*, even though the plaintiff's

9    likeness was realistically depicted, because it constituted only "4.2 percent" of the

10   defendant's series, the use was transformative.  21 Cal. App. 5th at 864 (reversing

11   denial of anti-SLAPP motion).  And in *Sivero*, the court held that *The Simpsons'* use

12   of the plaintiff's likeness to create the well-known character of Louie was

13   transformative in part because Louie was "a minor character in the overall

14   constellation of Simpsons characters."  2018 WL 833696, at *10.

15        Finally, Plaintiff concedes that *Fortnite's* value comes from Epic Games'

16   creativity, skill, and reputation, unassociated with the Dance Step.  Compl. ¶¶ 4 (since

17   its release, "*Fortnite* has become among the most popular video games ever"), 18

18   ("prior to releasing *Fortnite* . . . Epic had already developed two popular video game

19   franchises"), 28 ("Soon after its release, *Fortnite* became an international

20   phenomenon.").  This too shows its transformative use.  *See de Havilland*, 21 Cal.

21   App. 5th at 864 (transformative use shown by successfulness of series' "screenwriter,

22   director, and producer"; "[a]ccomplished writers"; and "[h]ighly-regarded and award-

23   winning actors"); *Sivero*, 2018 WL 833696, at *10 (transformative use as "success of

24   *The Simpsons*" does not derive "primarily from Sivero's fame").  Thus, the right of

25   publicity claims fail under New Jersey and California law.[14]

26

27   _____

28   [14]  Satisfaction of the Transformative Use test also requires dismissal of Plaintiff's
     unfair competition claim.  *Kirby*, 144 Cal. App. 4th 47, 61.

### D. Plaintiff Cannot State a Trademark Claim

#### 1. <u>*Rogers v. Grimaldi* Principles Bar Plaintiff's Unfair Competition and Trademark Claims</u>

In addition to being preempted by the Copyright Act, Plaintiff's unfair competition (Count V) and trademark (Counts VI through VIII) claims are barred by the First Amendment, which permits expressive works, like *Fortnite*, *see supra* 6, to use trademarks as part of their artistic message.  To assess First Amendment protection in this context, the Ninth Circuit has "adopted the Second Circuit's approach from *Rogers v. Grimaldi*," *E.S.S.*, 547 F.3d at 1099 (citing 875 F.2d 994, 999 (2d Cir. 1989)), which "is relatively straightforward to apply, and is very protective of speech."  *Novalogic, Inc. v. Activision Blizzard*, 41 F. Supp. 3d 885, 900 (C.D. Cal. 2013).  The approach, which applies to "the use of a trademark in the body of the work," has two prongs:

> An artistic work's use of a trademark that otherwise would violate the Lanham Act is not actionable unless the use of the mark has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless it explicitly misleads as to the source or the content of the work.

*E.S.S.*, 547 F.3d at 1099 (internal quotation marks and alterations omitted).  It applies to both federal and state unfair competition and trademark claims.  *See id.* at 1099, 1101.

**As to the first prong**, "only the use of a trademark with *no* artistic relevance to the underlying work *whatsoever* does not merit First Amendment protection."  *Id.* at 1100 (internal quotation marks omitted).  "In other words, the level of relevance merely must be above zero," and a video game is not required to be "about" the mark to qualify.  *Id.*  "This black-and-white rule has the benefit of limiting [courts'] need to engage in artistic analysis in this context."  *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1243 (9th Cir. 2013).

Here, Plaintiff admits the artistic relevance of including the Dance Step in *Fortnite* by acknowledging that "emotes (dances and movements)" are an essential

feature of the game.  Compl. ¶ 22.  Indeed, Plaintiff describes the emotes as "incredibly popular" and "fundamental to *Fortnite's* success."  *Id.* ¶ 25.  Plaintiff also admits that *Fortnite's* inclusion of emotes has become part of the zeitgeist with professional athletes, young adults, teenagers, and kids "performing emotes."  *Id.* This is more than sufficient to qualify for First Amendment protection given that even a "tenuous" association satisfies the first prong.  *Roxbury Entm't v. Penthouse Media Grp., Inc.*, 669 F. Supp. 2d 1170, 1176 (C.D. Cal. 2009); *see E.S.S.*, 547 F.3d at 1100 (video game's inclusion of strip club with similar name to plaintiff's trademark was relevant to overall goal of creating a parody of East Los Angeles); *Novalogic*, 41 F. Supp. 3d at 900–01 (finding artistic relevance where use added "to the enjoyment users receive from playing the complicated game").

**As to the second prong**, a work can be subject to unfair competition or trademark claims only "if the creator uses the mark or material to explicitly mislead consumers as to the source or the content of the work."  *Brown*, 724 F.3d at 1245 (requiring "explicit indication," "overt claim," or "explicit misstatement"; internal quotation marks and alterations omitted).  The "mere use of a trademark alone cannot suffice to make such use explicitly misleading."  *E.S.S.*, 547 F.3d at 1100.  Yet, Plaintiff identifies no misleading conduct by Epic Games other than use of the Dance Step.  Further, Swipe It is only a tiny part of *Fortnite*, *see supra* 4, which further militates against a finding that the game is explicitly misleading as to its source.  *See VIRAG, S.R.L. v. Sony Computer Entm't Am. LLC*, 699 F. App'x 667, 668 (9th Cir. 2017) (affirming grant of Rule 12(b)(6) motion where trademark was used in video game because the plaintiff did not allege an "explicit indication, overt claim, or explicit misstatement").  As *Fortnite* is protected by the First Amendment, dismissal is appropriate.  *See id.*; *Brown*, 724 F.3d at 1247–48 (affirming grant of motion to dismiss); *Metrano v. Twentieth Century Fox Film Corp.*, No. 08 Civ. 086314, 2009 WL 10672576, at *5 (C.D. Cal. July 16, 2009) (granting Rule 12(b)(6) motion to dismiss).

2.      Plaintiff Cannot State a Claim for Trademark Dilution

In addition to being barred by the First Amendment, Plaintiff's trademark dilution claim fails do to failure to state a claim.  As explained in *Lions Gate*, a dilution claim requires that the defendant use "the allegedly famous mark as Defendants' own mark or to identify Defendants' services."  170 F. Supp. 3d at 1270 (granting Rule 12(b)(6) motion with prejudice).  Similarly, here, Plaintiff does not and cannot claim that Epic Games is using the Dance Step as its own mark or to identify its services.  Compl. ¶¶ 105–111.  Thus, there is an independent basis to dismiss Count VIII.

### E.      Plaintiff Is Not Entitled as a Matter of Law to Several Forms of Relief Requested in the Complaint

The Court need not reach Plaintiff's requested relief as all of his claims should be dismissed.  Yet, it also is important to know that in addition to his overbroad claims, Plaintiff also requests remedies that are not available as a matter of law.

***First***, Plaintiff requests "punitive and/or exemplary damages" as a remedy for his Copyright Act and Lanham Act claims.  Compl. 24:6, 24:12, 25:5, 25:14.  But such relief is not available.  *See Abbywho, Inc. v. Interscope Records*, No. 06 Civ. 0672, 2008 WL 11406099, at *5 (C.D. Cal. Jan. 7, 2008) ("punitive damages . . . cannot be recovered under the Lanham Act"); *Saregama India Ltd. v. Young*, No. 02 Civ. 9856, 2003 WL 25769784, at *1 (C.D. Cal. Mar. 11, 2003) ("Punitive damages are not available under the Copyright Act.").

***Second***, Plaintiff requests "an award of damages" as a remedy for his state law unfair competition claim.  Compl. 24:27.  The Ninth Circuit, however, has held that "California law does not recognize the recovery of damages by individuals for unfair business practices."  *Kates v. Crocker Nat'l Bank*, 776 F.2d 1396, 1398 (9th Cir. 1985); *see also Wood v. Midland Credit Mgmt., Inc.*, No. 05 Civ. 3881, 2005 WL 3159639, at *5 (C.D. Cal. July 29, 2005) (holding that "neither nonrestitutionary nor punitive damages are an available form of remedy under California Business and

Professions Code § 17200").

**Third**, Plaintiff requests "attorney's fees" for his copyright claims. Compl. 24:7, 24:13. Yet, the Copyright Act provides that "no award of statutory damages or of attorney's fees . . . shall be made for . . . any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." 17 U.S.C. § 412. Thus, Plaintiff is not entitled to attorney's fees as he did not apply to register the Dance Step until December 4, 2018, Compl. ¶ 44, and Swipe It was added to *Fortnite* on July 12, 2018. *Id.* ¶ 31; *see Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (attorney's fees not available where "infringement commenced prior to . . . registration date"); *see also Solid Oak Sketches, LLC v. 2K Games, Inc.*, No. 16 Civ. 724, 2016 WL 4126543, at *2 (S.D.N.Y. Aug. 2, 2016).[15] Accordingly, Epic Games requests that this Court dismiss Plaintiff's requests for (a) punitive and exemplary damages on his Copyright Act and Lanham Act claims; (b) damages on his state law unfair competition claim; and (c) attorney's fees on his copyright claims.

## V.   CONCLUSION

Epic Games respectfully requests that this Motion be granted in its entirety. Moreover, as Plaintiff amended his complaint a second time after being advised of the bases for this Motion, Epic Games requests that the dismissal be with prejudice.

---

[15]   Plaintiff also would not benefit from the three-month publication safe harbor as the Dance Step was published in 2014, Cendali Decl. Ex. B, but he did not apply to register it until 2018. Compl. ¶ 44.

1    DATED:  February 11, 2019

2                                              */s/ Dale M. Cendali*
                                               Dale M. Cendali (admitted *pro hac vice*)
3                                              dale.cendali@kirkland.com
                                               Joshua L. Simmons (admitted *pro hac vice*)
4                                              joshua.simmons@kirkland.com
                                               Shanti S. Conway (admitted *pro hac vice*)
5                                              shanti.conway@kirkland.com
                                               Megan L. McKeown (admitted *pro hac vice*)
6                                              megan.mckeown@kirkland.com
                                               KIRKLAND & ELLIS LLP
7                                              601 Lexington Avenue
                                               New York, New York 10022
8                                              Telephone: (212) 446-4800
                                               Facsimile: (212) 446-4900
9
                                               Sharre Lotfollahi (S.B.N. 258913)
10                                             sharre.lotfollahi@kirkland.com
                                               KIRKLAND & ELLIS LLP
11                                             333 South Hope Street
                                               Los Angeles, CA  90071
12                                             Telephone:  (213) 680-8400
                                               Facsimile:  (213) 680-8500
13
                                               *Attorneys for Defendant Epic Games, Inc.*
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

On February 11, 2019, I electronically filed the foregoing **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT EPIC GAMES, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND SPECIAL MOTION TO STRIKE (ANTI-SLAPP) PLAINTIFF'S SECOND AMENDED COMPLAINT** with the Clerk of the Court by using CM/ECF system, which will send a notice of electronic filing to all persons registered for ECF. All copies of documents required to be served by Fed. R. Civ. P. 5(a) and L.R. 5-3.1.1 have been so served.

/s/ *Dale M. Cendali*
Dale M. Cendali